BC
26-cv-01316
Judge Steven C. Seeger
Magistrate Judge Jeffrey T. Gilbert
Random Cat 2

RECEIVED MAN
2/4/2026
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

FILED PH
2/17/2026
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| JORGE ALEJANDRO ROJAS,<br>*Plaintiff,*<br>vs.<br><br>WELLABE SERVICES COMPANY, INSURE OMNI, LLC, DAVID J KEITH, ERIC T NEMMERS, DAISY SANTOS, and REGINALD BAGGS,<br><br>*Defendants*. | Case No. _______________<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff, Jorge Alejandro Rojas, brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, against Defendants Wellabe Services Company ("Wellabe"), Insure Omni, LLC ("Omni"), David J Keith ("Keith"), Eric T Nemmers ("Nemmers"), Daisy Santos ("Santos"), and Reginald Baggs ("Baggs"), and alleges based on personal knowledge and information and belief:

## INTRODUCTION

1. "When it comes to robocalls, you can only call those who, like Blondie, have said, 'Call me. Call me on the line.' If you call people who haven't opted in, then you face liability under the Telephone Consumer Protection Act." *Perrong v. Bradford*, 2024 WL 2133801, at *1 (E.D. Pa. May 13, 2024), overruled on other grounds, 157 F.4th 251 (3rd. Cir. Oct. 6, 2025).
2. As the Supreme Court has explained, Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019. The States likewise field a constant barrage of complaints. For nearly 30 years, representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known

as the "TCPA", generally prohibits robocalls to cell phones and home phones. *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2343 (2020).

3. Plaintiff brings this action against Defendants for violations of the TCPA, 47 U.S.C. § 227.
4. This case involves a campaign by Defendants which placed illegal, automated calls, concerning hospital indemnity insurance.

**JURISDICTION AND VENUE**

5. This Court has subject-matter jurisdiction over the claims herein under 28 U.S.C. § 1331.
6. This Court has personal jurisdiction over Defendants. The wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District. Plaintiff resided within this district when the calls were made. The calls were made for services being provided by Defendants within this district. The calls were made to an "in district" telephone number.
7. Defendants contacted Plaintiff specifically concerning the sale of services in Illinois, and within this District.
8. Venue is proper under 28 U.S.C. § 1391(b)(2).

**PARTIES**

9. Plaintiff Jorge Alejandro Rojas is a natural person residing in Bolingbrook, IL 60440, and is a citizen of the State of Illinois.
10. Defendant Wellabe Services Company ("Wellabe") is an Iowa entity, with an active foreign corporate registration with the Illinois Secretary of State, with a principal address of 601 6TH AVENUE Des Moines IA 50309, with a registered agent of Illinois Corporation Service Company located at 801 Adlai Stevenson Drive Springfield, IL 62703.
11. Defendant Insure Omni, LLC ("Omni") is a Florida entity, with a principal address of 9365 Dugard CT Orlando, FL 32827, and a registered agent of Reginald Baggs located at the same address.
12. Defendant David J Keith ("Keith") is the President of Wellabe with an address of 601 6TH AVENUE Des Moines IA 50309.
13. Defendant Eric T Nemmers ("Nemmers") is the Secretary of Wellabe with an address of 601 6TH AVENUE Des Moines IA 50309.
14. Defendant Daisy Santos ("Santos") is an Authorized Member of Omni, and is located at 4507 Mullins RD UNIT A Tampa, FL 33614.

15. Defendant Reginald Baggs ("Baggs") is an Authorized Member of Omni, and is located at 9365 Dugard CT Orlando, FL 32827.
16. Defendants are each a person as defined by 47 U.S.C. § 153(39).
17. Defendants acted through their agents, affiliates, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers.

**STATUTORY BACKGROUND**

18. The TCPA makes it unlawful to make calls to any cellular or residential line using an artificial or prerecorded voice, or an automatic telephone dialing system, without the call recipient's prior express consent. *See* 47 U.S.C. § 227(b); *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012).
19. The TCPA makes it unlawful to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice to a telephone where the called party is charged for the call. 47 U.S.C. § 227(b)(1)(A).
20. The TCPA provides a private cause of action to persons who receive such automated or -pre-recorded calls. *See* 47 U.S.C. § 227(b)(3).
21. In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. It ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"
>
> I*n the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

22. The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See In re Rules & Regulations Implementing the TCPA*, 10 FCC Rcd. 12391, 12397 (1995).
23. When considering individual officer liability under the TCPA, other Courts have agreed that a corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *See, e.g., Jackson Five Star Catering, Inc. v. Beason*, 2013 U.S. Dist. LEXIS 159985, *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA "where they 'had direct, personal participation in or personally authorized the conduct found to have violated the statute.'"); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415-16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").
24. Under the TCPA, individual party Defendants (Keith, Nemmers, Santos, Baggs) are personally liable for the acts and omissions alleged in this Complaint.
25. Individual party Defendants (Keith, Nemmers, Santos, Baggs) in this case directed and oversaw the telemarketing activity in progress, including selecting any third-party affiliate to make the call, exercised control over those affiliates, and any other employees who made the telephone calls.
26. Even if Defendants "uploaded" a list of telephone numbers to a database, that database or system can still be using a random or sequential number generator to decide the order in which to send the calls, given that it can't call them *all* at once.
27. For example, the calling system may have identified a dialing order to each telephone number for each telemarketing campaign when sending out the calls, using a random or sequential number generator.
28. The calls were conducted using an Automatic Telephone Dialing System (ATDS). As the Supreme Court recently clarified, the key feature of an ATDS is the capacity to store numbers to be called using a random or sequential number generator or to produce numbers to be called using a random or sequential number generator. *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1167 (2021).
29. While not circuit law in this Circuit, the Third Circuit recently clarified that "Congress envisioned a broad understanding of 'equipment'" that constitutes an ATDS. It also clarified

that the analysis of whether an ATDS was used in violation of the TCPA centers around "whether the defendant employ[s] [ATDS] capacities to make automated calls," *Panzarella v. Navient Sols., Inc.*, 37 F.4th 867, 873, 878 (3d Cir. 2022). In so doing, it held that Congress intended to "ban all autodialed calls" because Congress "found autodialer technology to be uniquely harmful." *Id.* at 879 (cleaned up).

30. In enacting the ATDS prohibition, the Third Circuit cited favorably to Congressional understanding "that telemarketers could transform ordinary computers into autodialers through minor and inexpensive modifications," including by "relying on computerized databases containing telephone numbers during their dialing campaigns." *Id.* at 880 (cleaned up). The Third Circuit held that, in passing the TCPA's ATDS prohibition, Congress intended to remedy the problems caused by callers using computer software to dial numbers randomly or sequentially from a list or database. See *id.*

31. Under *Panzarella*, a system that uses a random or sequential number generator to produce each telephone number to be called from a list of telephone numbers, and then dials those numbers, is by definition an ATDS. This is so even if the telephone numbers in the list themselves were not randomly or sequentially generated. *See id.* at 879-880.

32. *Facebook* did not use an ATDS because it did not use random or sequential means to select numbers to send text messages to. Rather, it used a specific user action, compromised account security, to send the messages. *Facebook*, 141 S. Ct. at 1168. In other words, an account data breach, not random or sequential selection, was used to send the text message. Similarly, the Ninth Circuit recently held in *Brickman v. United States* that Facebook did not use an ATDS when it sent birthday text messages because the birthdays, not random or sequential number generators, were used to draw numbers to be called. 56 F.4th 688 (9th Cir. 2022).

33. Plaintiff is ignorant of the exact process by which the Defendants used the system they connected to the telephone service. Moreover, "The newly clarified definition of an ATDS is more relevant to a summary judgment motion than at the pleading stage." *Gross v. GG Homes, Inc.*, No. 3:21-cv-00271-DMS-BGS, 2021 WL 2863623, at *7 (S.D. Cal. July 8, 2021); *accord Miles v. Medicredit, Inc.*, No. 4:20-cv-01186-JAR, 2021 WL 2949565 (E.D. Mo. July 14, 2021).

**ALLEGATIONS**

34. At all times relevant hereto, Plaintiff maintained and used a residential telephone line which is charged on a per call and per minute basis, with phone number (312) XXX-4004.
35. Defendant makes, or has made on its behalf, automatically dialed telemarketing calls soliciting its insurance products and services.
36. Plaintiff's phone number is not associated with a business and is used by Plaintiff solely.
37. Plaintiff is the account holder and customary user of his phone number.
38. Plaintiff was within this district when he received the telephone calls.
39. The telephone number called is an in-district telephone number, and using an in-district number to place the call.
40. Omni's website advertises that "Our insurance services reach clients throughout all regions of the United States." https://insureomni.com/#who-we-are.
41. Defendants have the necessary minimum contacts with this District – especially in light of the fact that they called an in district telephone number.
42. **Call 1.** On or about February 4, 2026, at 4:46 PM Chicago time, Plaintiff received a telephone call from Defendants, or an agent acting on their behalf, from telephone number that displayed on Plaintiff's Caller ID as 312-603-4891.
43. The Caller ID name of the caller was "COOK COUNTY."
44. When Plaintiff answered the phone, he had to state a greeting several times, prior to being connected to a male who identified himself as working for "Healthcare Solution."
45. The agent on the phone stated that he was selling hospital indemnity insurance.
46. Ultimately, Plaintiff was connected to several additional agents. During the transfers, there was hold music, tones, and other indicia of the use of an automatic telephone dialing system, including the hold music of "your call is very important to us, please…" which is indicative of the use of the Vicidial autodialer.
47. Plaintiff was ultimately connected to a representative which stated she was with Omni Insurance, and provided a website of insureomni.com.
48. The representative identified herself as "Daisy" and stated she was a licensed agent for the state of Illinois.
49. The Illinois licensed insurance agent database lists a Daisy Santos with email of INFO@INSUREOMNI.COM as a licensed agent.

50. Omni is an Illinois Designated Responsible Licensed Producer under License # 3003729239.
51. During the interaction, Plaintiff was issued a policy by Wellabe.
52. Ultimately, Plaintiff received information via e-mail from Omni, which included Daisy's information as well.
53. This is not the first time Wellabe has been sued for violations of the TCPA. *See Welch v. Wellabe Enterprise Group, Inc.,* 6:24-cv-00234 (Md. Fl.).
54. The Omni Insurance agent stated she was fed the phone call from a marketing company which is in charge of getting "prospects sent over to the agency" she works for.
55. The actions alleged in this complaint were made knowingly and/or willfully.
56. Plaintiff has not entered into an established business relationship with Defendants.
57. Defendants lack the necessary controls to make sure that solicitations are not sent to individuals who do not desire them.
58. Plaintiff has never consented to calls from Defendants which are challenged in this complaint.
59. Defendants may have hired the services of a lead generator who made the telephone calls and then forwarded the information to Defendants. The calls placed were made for the benefit of Defendants.
60. Each Defendant benefited from the telephone calls made.
61. Defendants Keith, Nemmers, Santos, and Baggs, as an officer of the company, directed, oversaw, and controlled the telemarketing conduct alleged in this complaint. This may have included for example selecting the dialing platforms to be used, overseeing any marketing campaigns which included creating lead lists, making the lead calls, using an automatic telephone dialing system dialed call, and actually authorizing the dialing.
62. Plaintiff alleges the telephone calls were made by an Automatic Telephone Dialing System ("ATDS").
63. The reasons why an ATDS was likely used includes the use of caller ID numbers that are local to the area code, the longer than natural pauses prior to being connected, the beeps, tones, and music, etc.
64. Plaintiff has never provided his consent to be called to Defendants.
65. The conduct alleged in this action was made willful and knowingly.

66. Defendants' phone calls utilized an Automatic Telephone Dialing System (ATDS) without obtaining Plaintiff's prior express written consent.
67. Defendants did not have any consent to call Plaintiff.
68. Defendants are not an organization exempt from the TCPA.
69. Upon information and belief, Plaintiff received additional calls from Defendants and their affiliates not included above.
70. The impersonal and generic nature of Defendants' calls shows that Defendants utilized an Automatic Telephone Dialing System (ATDS) in making the calls.
71. In total, Defendants' and/or their affiliates placed at least one (1) automated call to Plaintiff.
72. As a result of the foregoing, Plaintiff experienced frustration, annoyance, irritation, and a sense that his privacy has been invaded by Defendants.
73. The foregoing acts and omissions were in violation of the TCPA.
74. Other Defendants may be named in this case following discovery, including for example any other individuals or entities who directed the unlawful conduct to be made.
75. Defendants have any information concerning any entities they engage with to perform telemarketing services on their behalf in their custody and/or control.
76. The TCPA prohibits placing calls using an automatic telephone dialing system or automatically generated or prerecorded voice to a cellular telephone or one which is charged on a per call basis except where the calling has the prior express consent of the called party to make such calls or where the call is made for emergency purposes. 47 U.S.C. § 227(b)(1)(A)(iii).
77. As a result of Defendants' knowing and/or willful violations of 47 U.S.C. § 227 et seq., Plaintiff is entitled to treble damages of up to $1,500.00 for each and every call made in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(C).
78. The acts and omissions of Defendants constitute knowing and/or willful violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227.
79. Plaintiff seeks injunctive relief prohibiting such conduct violating the TCPA by Defendants in the future.
80. Plaintiff is also entitled to an award of costs.
81. Defendants' calls were not made for "emergency purposes."
82. Defendants' calls to Plaintiff were made without any prior express written consent.

83. Defendants' acts as described above were done with malicious, intentional, willful, reckless, wanton, and negligent disregard for Plaintiff's rights under the law and with the purpose of harassing Plaintiff.

84. The acts and/or omissions of Defendants were done unfairly, unlawfully, intentionally, deceptively and fraudulently and absent bona fide error, lawful right, legal defense, legal justification or legal excuse.

85. As a result of the above violations of the TCPA, Plaintiff has suffered losses and damages as set forth above entitling Plaintiff to an award of statutory, actual and trebles damages.

86. Plaintiff, in discovery will identify additional telephone calls made by Defendants and or their agents or affiliates, and requests leave to amend the complaint after identifying.

87. Defendants hired, permitted, and enjoyed the benefits of any lead generator and call centers mass robocalling.

88. For the counts identified below, Defendants are directly liable as the party that caused the unlawful calls to be placed.

89. Plaintiff requests a jury trial on all issues so triable.

**COUNT 1.**

Violation of the TCPA's Automated Telemarketing Call Provisions, 47 U.S.C. § 227(b)(1)

90. Plaintiff incorporates the foregoing paragraphs as though they were set forth at length herein.

91. Defendant or one of their affiliates or vendors called Plaintiff's telephone which is charged on a per call and a per minute basis using an "automatic telephone dialing system" and/or a pre-recorded voice as defined by the TCPA on at least one (1) occasion in violation of 47 U.S.C. § 227(b)(1), without Plaintiff's prior express written consent.

92. Plaintiff was statutorily damaged at least one (1) occasion under 47 U.S.C. § 227(b)(3)(B) by the Defendants by the telephone calls described above, in the amount of $500.00 for each.

93. Plaintiff was further statutorily damaged because Defendants' willfully or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount as permitted under 47 U.S.C. § 227(b)(3)(C) for these willful or knowing violations.

WHEREFORE, Plaintiff respectfully requests that judgment be entered in his favor and against, Defendants, jointly and/or severally, in an amount of $1,500.00 plus costs and any other remedy deemed appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that judgment be entered in favor of him and against Defendants, jointly and/or severally, in an amount to be more fully determined at trial, but at least $1,500.00 as permitted by statute, as follows:

A. All actual damages Plaintiff suffered;
B. Statutory damages of $500.00 per call for each and every violation of 47 U.S.C. § 227(b);
C. Treble damages of $1,500.00 per call for each violation determined to be willful and/or knowingly pursuant to 47 U.S.C. § 227(b)(3)(C);
D. All reasonable witness fees, court costs, pre- and post-judgment interest, and other litigation costs incurred by Plaintiff;
E. Injunctive relief prohibiting such violations of the TCPA by Defendants in the future;
F. Leave to amend this Complaint to conform to the evidence presented at trial; and
G. Any other relief this Court deems proper.

Respectfully submitted,

Dated: February 4, 2026.

/s/ Jorge Alejandro Rojas
JORGE ALEJANDRO ROJAS
Rojas.jorge96@gmail.com
Plaintiff in Pro Se
557 Cambridge Way
Bolingbrook, IL 60440
(424) 219-1582